**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LI NI, *on his own behalf and on behalf of himself*
*and all other persons similarly situated*,

                              Plaintiff,

          -against-

RED TIGER DUMPLING HOUSE INC d/b/a Red
Tiger Dumpling House, TWO COUNTRIES
DUMPLING HOUSE INC d/b/a Red Tiger
Dumpling House, JUN WEN BURNS, and HAI
QING LIU,
                              Defendants.
------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 19-3269 (GRB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ S̲T̲A̲T̲E̲M̲E̲N̲T̲

      Plaintiff Li Ni ("Plaintiff") commenced this putative collective and class action on behalf

of himself and all others similarly situated against corporate Defendants Red Tiger Dumpling

House Inc. d/b/a Red Tiger Dumpling House and Two Countries Dumpling House, Inc.

(collectively "Red Tiger") and individual Defendants Jun Wen Burns ("Burns") and Hai Qing

Liu ("Liu"), (collectively with Red Tiger, "Defendants") for violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL").

*See generally* Amended Complaint ("Am. Compl.") [DE 16].  Plaintiff seeks to recover for

Defendants' alleged improper retention of tips, failure to pay overtime and regular wages, and

other violations of applicable law.  *See id*.

      Plaintiff has moved for conditional certification as a collective action and for court-

authorized notice, pursuant to § 216(b) of the FLSA.  *See* Plaintiff's Memorandum of Law in

Support of his Motion for Conditional Certification ("Pl.'s Mem.") [DE 23]; Plaintiff's Reply

Memorandum of Law in Support of his Motion for Conditional Certification ("Pl.'s Reply")

[DE 26].  Defendants oppose Plaintiff's motion chiefly arguing that Plaintiff has failed to

demonstrate he is similarly situated to the other potential members of the collective or that these

employees were subject to a common unlawful policy or plan.  *See generally* Defendants'

Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification ("Defs.'

Opp'n") [DE 25].  For the reasons set forth below, Plaintiff's motion is GRANTED, in part, and

DENIED, in part.

II.     **BACKGROUND**

        A.     **Factual Background**

               1.     ***Plaintiff's Complaint***

        The following allegations are taken from Plaintiff's Amended Complaint and are

assumed to be true for purposes of the instant motion.  Defendants own and operate the Red

Tiger Restaurant located at 1320 Stony Brook Rd., Stony Brook, New York.  *See* Am. Compl.

¶¶ 8, 11.  Defendants Burns and Zhang were responsible for hiring and firing employees,

supervising and controlling employee work schedules, and determining rates and methods of

pay.  *Id*. ¶¶ 15, 12.

        Plaintiff was working as a waiter for Defendants from September 15, 2015 to May 12,

2019.  *Id*. ¶¶ 7, 22.  During this time, Plaintiff regularly worked from 11 a.m. to 10:30 p.m. for

10.5 hours a day, six or seven days per week, resulting in an excess of 40 hours per week.  *Id*.

¶¶ 28–32.  From September 15, 2015 to November 2018, Plaintiff did not receive any

compensation for his work.  *Id*. ¶ 35.  From December 2018 to February 2019, Plaintiff received

a monthly salary of $100.  *Id*. ¶ 36.  From March 2019 through May 12, 2019, Plaintiff again did

not receive any compensation for his work. *Id*. ¶ 37. Instead, Plaintiff's pay consisted entirely of tips which ranged from $150 to $180 per day. *Id*. ¶¶ 38–39. Plaintiff asserts that he received his tips from a tip pool shared among waiters/waitresses, busgirls, and the receptionist. *Id*. ¶ 45. Although Defendants guaranteed that Plaintiff would receive a minimum amount of tips per day, to be raised incrementally each year, the amount of tips Plaintiff received on several occasions was less than the guaranteed amount. *Id*. ¶ 42. Indeed, after Defendants' receptionist quit in early 2017, Plaintiff states that he and the other waiters/waitresses began fulfilling the responsibilities of the receptionist at least three days per week. *Id*. ¶¶ 46, 49. On these days, Plaintiff would receive $10 in tips per day. *Id*. ¶ 50. Plaintiff further alleges that sometime in December 2018, Defendant Burns began misappropriating the tips by diverting them to non-tipped employees -- namely chefs -- and undercounting the amount of the tips received. *Id*. ¶ 51.

According to Plaintiff, Defendants did not pay him overtime compensation at the rate of one and one-half times his regular pay for hours worked in excess of 40 per week or "spread of hours" premium for shifts that lasted longer than 10 hours. *Id.* ¶ 56. Defendants also failed to maintain accurate records of the hours worked by Plaintiff and failed to provide Plaintiff with any wage notice or wage statements. *Id.* ¶ 55. Defendants never informed Plaintiff of any tip deductions toward the minimum wage. *Id.* ¶ 44. The Amended Complaint also asserts that there are many current and former employees of Defendants who were treated in the same manner as he was. *Id.* ¶¶ 20–21.

### 2. *Plaintiff's Declaration in Support of the Instant Motion*

In support of the motion for conditional certification, Plaintiff has submitted his own affidavit in which he attests to certain facts relevant to the instant motion. *See* Affidavit of Li Ni in Support of Plaintiff's Motion for Conditional Certification ("Ni Aff.") [DE 22-5]. Within the

Affidavit, Plaintiff repeats many of the same facts pleaded in the Amended Complaint regarding his own employment. *Id*. ¶¶ 3–38. However, he also identifies 19 current or former coworkers whom he contends were subjected to similar unlawful employment practices. *Id*. ¶ 39. The 19 individuals identified by Plaintiff fall into the following categories: (1) waiters/receptionists; (2) cashiers; (3) deliverymen; (4) packers; (5) dishwashers; (6) oil woks; (7) head fry woks; (8) fry woks and their helpers; (9) soup dumpling/dumpling chefs; and (10) miscellaneous kitchen staff. *See id*. Throughout his employment with Defendants, Plaintiff states that he "regularly observed and spoke with [his] co-workers about [their] wages and work." *Id*. ¶ 40. Plaintiff states that he spoke with his co-workers about their wages during their rides to and from work and at work itself. *Id*. ¶¶ 40–41. Plaintiff personally observed the hours worked by his coworkers because they were all transported to and from work by the Defendants at designated times and from a designation location. *Id*. ¶¶ 47–55. Each employee worked in excess of 40 hours per week. *See id*. ¶ 43.

Plaintiff identifies two individuals referred to as Xiao Zheng and Lisa, who worked from 11 a.m. to 10 p.m. -- 11 hours a day -- five or six days per week. *Id*. ¶¶ 62–64, 66–69. Lisa worked as the cashier and receptionist, *id*. ¶ 66, and Xiao Zheng worked as a waiter and receptionist, *id*. ¶ 59. Plaintiff found out that Xiao Zheng's pay consisted entirely of tips from the tip pool based on the conversations he had with him during their break times. *Id*. ¶ 65. Plaintiff identifies an individual referred to as Lao Zhu, who transported the employees to and from work and worked as the deliveryman from 10:15 a.m. to 11 p.m. for approximately 13 hours a day, seven days per week. *Id*. ¶¶ 78–79. Lao Zhu received a fixed monthly salary of $1,800 in addition to tips. *Id*. ¶¶ 83, 85. Plaintiff was familiar with Lao Zhu's wage based on

4

conversations they had together during their breaks and because Defendant Burns complained to Plaintiff about having to pay Lao Zhu a based salary of $1,800 a month. *Id*. ¶¶ 82–83.

Plaintiff also identifies an individual referred to as Hunan Lao Xiang, who worked as a "miscellaneous worker in the kitchen" and filled in as the deliveryman in the rare instances that Lao Zhu was absent from work. *Id*. ¶¶ 87, 89. Hunan Lao Xiang generally worked from 11 a.m. to 10 p.m. for a total of 11 hours a day, six days per week unless he was filling in as the deliveryman, in which case he would work the same hours Lao Zhu worked. *Id*. ¶¶ 90–93. Plaintiff states that Hunan Lao Xiang was paid a fixed monthly salary of around $2,600 which Plaintiff learned about during conversations he had with Hunan Lao Xiang during their break times. *Id*. ¶ 95.

Plaintiff further identifies an employee from Hunan, China, who worked as the oil wok from 11 a.m. to 10 p.m. -- again for 11 hours a day -- six days per week. *Id*. ¶ 99. The oil wok received a fixed monthly salary between $2,500 and $2,800, which he learned about conversations he had with the oil wok the restaurant and on the company van. *Id*. ¶ 103. Plaintiff identifies two employees from Canton and Dungbei, China, who worked as the fry wok and fry wok helper from 10:15 a.m. to 11 p.m., for 11 hours a day, six days per week. *Id*. ¶¶ 43, 123, 127–28. The fry wok and fry helper received a fixed monthly salary between $3,500 and $4,000, and $2,800 to $3,300, respectively. *Id*. ¶¶ 121, 129. Plaintiff had conversations with the fry wok and fry wok helper about their wages and work conditions outside of the restaurant and inside the kitchen. *Id*. ¶¶ 120–21, 130. Plaintiff also identifies an individual referred to as Hunanese Lao Da, who he states worked as the head fry wok from 11:00 a.m. to 10:00 p.m. for 11 hours a day, six days per week. *Id*. ¶¶ 109–11. According to Plaintiff, Hunanese Lao Da was

"first in rank" after Defendants Burns and received a monthly salary of approximately $10,000 which included her base salary of $5,000 and 10% of the total sales of the restaurant. *Id*. ¶¶ 114–15.

Plaintiff refers to four dishwashers but does not provide any personal identifying information about them, except for one who Plaintiff states was from Hunan, China. *Id*. ¶¶ 136–42. The dishwashers worked from 11 a.m. to 10 p.m. -- for 10 hours a day -- six days per week and received a fixed monthly salary between $1,500 and $1,600. *Id*. ¶¶ 134–35. Plaintiff states that one dishwasher was Plaintiff's neighbor and told Plaintiff about his wages. *Id*. ¶ 145.

Plaintiff identifies four individuals referred to as Lao Tou Zi, Chen Jie, Da Jie, and Da Ge, who worked as soup dumpling/dumpling chefs from 11 a.m. to 10 p.m. -- for 11 hours a day -- five or six days per week. *Id*. ¶¶ 147, 153–54, 157, 160–61, 164, 169, 174, 176, 178. All soup dumpling/dumpling chefs received a fixed monthly salary of $3,500, except for one who received between $2,800 and $3,000. *Id*. ¶¶ 155, 163, 172, 179. Plaintiff learned about their wages during conversations he had with them on smoke breaks, *id*. ¶ 156, during lunch breaks in the afternoon, *id*. ¶¶ 163, 173, or during break times, *id*. ¶ 180.

Plaintiff refers to three packers, only one of whom he identified by name, Ah Wei, who worked from 11 a.m. to 10 p.m. for 10 hours a day, six days per week and received a fixed monthly salary of $2,200 or a fixed range of $2,000 to $2,300. *Id*. ¶¶ 185–86, 189, 195, 197, 207–08. Plaintiff learned about the dishwashers' salary from conversation he had with them during their break times or smoke breaks. *Id*. ¶¶ 180, 190, 198, 210.

### B. Procedural History

Plaintiff commenced the instant action against Defendants on June 6, 2019. *See* DE 1. On September 27, 2019, the parties entered into Stipulation authorizing Plaintiff to file an

Amended Complaint.  *See* DE 15.  Plaintiff filed their Amended Complaint on October 4, 2019.

*See* Am. Compl.  On October 28, 2019, Defendants filed their Answer to the Amended

Complaint.  *See* Amended Answer ("Am. Ans.") [DE 18].  Judge Azrack held a pre-motion

conference on October 31, 2019 and set a briefing schedule for the filing of a motion for

conditional certification.  *See* DE 20.  The instant action has since been reassigned to Judge

Brown.  *See* Electronic Order dated February 3, 2020.

On November 24, 2019, Plaintiff filed the instant motion for conditional certification of a

collective action.  *See* Pl.'s Mem.; Plaintiff's Proposed Notice of Pendency of Collective Action

and Consent to Join Form ("Notice of Pendency") [DE 22-3]; Plaintiff's Proposed Publication

Order ("Publication Order") [DE 22-4].  In support of the motion, Plaintiff relies on his own

Affidavit.  *See* Pl.'s Aff. [DE 22-5].  Defendants filed opposition to Plaintiff's motion on

December 13, 2019.  *See* Defs.' Opp'n.  In support of their opposition, Defendants rely on the

Affidavit of Defendant Burns, President of Two Countries Dumpling House d/b/a Red Tiger

Dumpling House.  *See* Affidavit of Jun Wen Burns in Opposition to Plaintiff's Motion for

Conditional Certification ("Burns Aff.")  [DE 25-1].  On January 3, 2020, Plaintiff filed a reply

in support of the instant motion.  *See generally* Pl.'s Reply.

## III.   APPLICABLE LAW

### A.    Legal Standard for Conditional Certification

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section
> 207 of this title shall be liable to the employee or employees affected
> in the amount of their unpaid minimum wages, or their unpaid
> overtime compensation, as the case may be, and in an additional
> equal amount as liquidated damages. . . . An action to recover . . .
> may be maintained against any employer (including a public
> agency) in any Federal or State court of competent jurisdiction by
> any one or more employees for and in behalf of himself or

7

> themselves and other employees similarly situated.  No employee
> shall be a party plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent is filed
> in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to

recover overtime compensation and/or minimum wages.  *Id*.; *see also Cabrera v. Stephens*, No.

16-CV-3234, 2017 WL 4326511, at *4 (E.D.N.Y. Sept. 28, 2017) (citing *Bifulco v. Mortg. Zone*,

*Inc*., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)) ("The FLSA provides a private right of action to

recover unpaid overtime compensation and/or minimum wages."); *Moore v. Eagle Sanitation,*

*Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011) (citing 29 U.S.C. § 216(b)); *Gjurovich v. Emmanuel's*

*Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting *Hoffmann v. Sbarro, Inc*.,

982 F. Supp. 249, 260 (S.D.N.Y. 1997)).  "Although the FLSA does not contain a class

certification requirement, such orders are often referred to in terms of 'certifying a class.'"

*Bifulco*, 262 F.R.D. at 212 (quoting *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590, 2007

WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007)).

Courts within the Second Circuit apply a two-step analysis to determine whether an

action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537,

544–45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a

two-step method" for analyzing collective action certification).  First, the court determines

whether the proposed collective members are "similarly situated."  *Puglisi v. TD Bank, N.A.*, 998

F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 908 F.

Supp. 2d 344, 346 (E.D.N.Y. 2012)); *see also McGlone v. Contract Callers, Inc.*, 867 F. Supp.

2d 438, 442 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555).  If the court decides in the

affirmative, then the proposed collective members must consent in writing to be bound by the

result of the suit, or "opt-in."  *McGlone,* 867 F. Supp. 2d at 442 (citing *Cunningham v. Elec.*

*Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see also* 29 U.S.C. § 216(b).  The

second step, which typically occurs after the completion of discovery, requires the court to make

factual findings whether the class members are actually similarly situated.  *Rosario v. Valentine*

*Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United*

*Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)); *see also Sharma v. Burberry*

*Ltd.*, 52 F. Supp. 3d 443, 451 (E.D.N.Y. 2014); *Thornburn v. Door Pro America*, No. 16-CV-

3839, 2018 WL 1413455, at *5 (E.D.N.Y. Mar. 20, 2018).  "At that juncture, the court examines

the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated

to the named plaintiff."  *Bifulco*, 262 F.R.D. at 212 (quoting *Hens v. ClientLogic Operating*

*Corp.*, No. 05-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006)).

   The instant motion concerns only the first step—whether the proposed opt-in members

are "similarly situated" such that conditional certification should be granted.  At this stage, "the

evidentiary standard is lenient," *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery v. Buth-Na-*

*Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. Aug. 8, 2008)), and plaintiffs need only

"make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims

of a common policy or plan that violated the law.'"  *Myers*, 624 F.3d at 555 (quoting *Hoffmann*,

982 F. Supp. at 261); *see also Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372

(E.D.N.Y. 2008); *Perez v. Allstate Ins. Co*., No. 11-CV-1812, 2014 WL 4635745, at *5

(E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552

(S.D.N.Y. 2013).  "[T]he key question for the similarly situated inquiry is not whether plaintiff's

job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed

plaintiffs are similarly situated . . . with respect to their allegations that the law has been

violated."  *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017)

(internal quotations and citations omitted).  Therefore, when "plaintiffs attest that they regularly worked in excess of [ ] 40 hours per week and worked evenings, early mornings, and weekends without being properly paid . . . [s]uch attestations . . . are sufficient for the purposes of [conditional certification]." *Bifulco*, 262 F.R.D. at 214 (internal citation omitted); *see also Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267, 2019 WL 1060627, at *2 (E.D.N.Y. Mar. 6, 2019).  "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).  Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23 and "that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001) (collecting cases); *see also Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation— do not apply to a collective action").

At the initial certification stage, courts do not require proof of an actual FLSA violation, but rather require the existence of a "'factual nexus' [ ] between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see also Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-

10

1491, 2015 WL 4603117, at *6 (E.D.N.Y. 2015); *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012).  This determination is typically based on the pleadings, affidavits, and declarations submitted by the plaintiff or plaintiffs.  *See Fa Ting Wang*, 2015 WL 4603117, at *5–6; *Brabham v. Mega Tempering & Glass Corp.*, No. 13-CV-0054, 2013 WL 3357722, at *3 (E.D.N.Y. July 3, 2013); *Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013).

"Although plaintiff's 'burden of proof is low, it is not non-existent—certification is not automatic.'" *Elamrani v. Henry Limousine, Ltd.*, No. 15-CV-2050, 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (quoting *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264, 2014 WL 465542, at *1 (S.D.N.Y. 2014)).  As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see also Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

The standard of proof, however, should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553 (quoting the same).  With this in mind, courts have found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify" a collective.  *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see also Shillingford v. Astra Home Care, Inc.*, No. 16-CV-6785, 2018 WL

1033243, at *3 (S.D.N.Y. Feb. 23, 2018) ("Accordingly, an FLSA collective action may be

conditionally certified upon even a single plaintiff's affidavit.") (citation omitted); *Cabrera v.*

*Stephens*, No. 16-CV-3234, 2017 WL 4326511, at *5 (E.D.N.Y. Sept. 28, 2017) ("Conditional

certification is regularly granted based upon a complaint and one or two affidavits that

collectively demonstrate the requisite nexus.") (citation omitted); *Bhumithanarn v. 22 Noodle*

*Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that

the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden

at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy

or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs").

## I.   DISCUSSION

### A.   Conditional Certification

Plaintiff seeks the conditional certification of:

> Current and former non-exempt employees employed at any time from June 06,
> 2016 to the present by: (1) RED TIGER DUMPLING HOUSE INC d/b/a Red Tiger
> Dumpling House; and (2) TWO COUNTRIES DUMPLING HOUSE INC d/b/a
> Red Tiger Dumpling House, both located at 1320 Stony Brook Rd, Stony Brook,
> NY 11790; (3) JUN WEN BURNS, and (4) HAI QING LIU.

*See* Notice of Pendency at 1 [DE 22-3]; *see also* Publication Order at 2 [DE 22-4].  Plaintiff

contends that he and potential collective members are similarly situated because they were

subjected to Defendants' common policy of not paying (1) at least minimum wage for all hours

worked, (2) overtime wages, and (3) tips that were illegally retained in violation of the FLSA.

*See* Pl.'s Mem. at 7, 19.  In his Affidavit, Plaintiff identifies 19 individuals currently or

previously employed by Defendants as waiters/waitresses, receptionists, cashiers, deliverymen,

packers, dishwashers, oil woks, head fry woks, fry woks and their helpers and soup

dumpling/dumpling chefs.  Li Aff. ¶ 43.  In the instant motion, Plaintiff distinguishes among the

collective, and concedes that only the waiters/waitress, deliverymen, and packers, were subject to the denial of minimum wage and illegal retention of tips. *See* Pl.'s Mem. at 7.  However, as it relates to the denial of overtime pay, Plaintiff contends that the collective should cover all non-exempt employees regardless of job title. *See id*. at 6.  As such, the Court will limit its analysis to Plaintiff's overtime claim.  Having reviewed the Amended Complaint and Plaintiff's declaration, the Court determines that Plaintiff has made the "modest factual showing" necessary to demonstrate that cashiers, waiters/waitresses, receptionists, deliverymen, oil woks, fry woks, fry wok helpers, dishwashers, dumpling chefs, and packers were similarly situated "victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555.  However, the Court determines that Plaintiffs have failed to meet their burden with respect to "all non-exempt employees" of Defendants.

First, the Court determines that Plaintiff has attested to facts sufficient to allege that he was subject to an unlawful policy which did not compensate him for overtime wages in violation of the FLSA and NYLL.  Plaintiff states that during his employment, in addition to his work as a waiter, he also began working as the receptionist on certain days of the week.  Li Aff. ¶¶ 7, 46.  He consistently worked 10.5 hour shifts, between 11 a.m. and 10:30 p.m., for either six or seven days a week, resulting in 63 or 73.5 hours per week. *Id*. ¶¶ 28–32.  Plaintiff was either paid solely in tips with no fixed salary, or he was paid a fixed monthly salary of $100 in addition to tips. *Id*. ¶¶ 36, 38–39.  On the days he doubled as the receptionist, Plaintiff states he was only paid $10 in tips. *Id*. ¶ 50.  Regardless of the way he was compensated, Plaintiff asserts that Defendants did not compensate him for overtime wages, among other things. *Id*. ¶ 56.  At this preliminary stage, the Court finds that these facts sufficiently allege that he was subject to a policy in which he did not receive overtime compensation in violation of the FLSA.  Further,

13

based on this information, the Court "may infer" that other waiters/waitresses and receptionists "worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA." *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066 2019 WL 699179, at *8 (S.D.N.Y. Feb. 5, 2019) (collecting cases); *see also Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc.*, No. 17-CV-0840, 2018 WL 3155835, at *4 (S.D.N.Y. June 28, 2018) (finding that certification was proper for all delivery persons based on the experience of the named plaintiffs, who were themselves delivery persons).  The inference is also supported by Plaintiff's identification of some of these individuals and how they were paid and specifically the failure to pay them overtime.

Second, the Court finds that Plaintiff's Affidavit also sufficiently alleges a common policy or practice by which Defendants required other categories of non-exempt employees to work in excess of 40 hours per week without paying them overtime as required by the FLSA. The factual nexus between Plaintiff's situation and that of the putative collective is the heart of the Court's analysis when determining whether to conditionally certify a collective action.  *See Sobczak,* 540 F. Supp. 2d at 362 (finding a named plaintiff is not required to show "an actual FLSA violation" at this stage, but rather only that "a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs") (quoting *Wraga*, 2006 WL 2443554, at *1).  Based on personal observations and conversations he had with his coworkers, Plaintiff identifies 18 employees working as cashiers, deliverymen, oil woks, head fry woks, fry woks and their helpers, dishwashers, soup dumpling/dumpling chefs, and packers who also worked in excess of 40 hours per week, but were not paid overtime wages.  *See* Li Aff. ¶ 43.

"Courts in this Circuit have commonly authorized the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees such

as their names, their duties and their hours worked or where plaintiff provides affidavits from such employees setting forth the pertinent facts." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014); *see also Silva*, 2013 WL 6330848, at *3 (collecting cases); *Zhang*, 2013 WL 1729274, at *4.  "When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481–82 (S.D.N.Y. 2016); *see also Sanchez*, 2014 WL 465542, at *2 ("Where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process"; otherwise "the Court is left with a list of generalized allegations . . . precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient."); *Qing Gu*, 2014 WL 1515877, at *3 (denying conditional collective action certification where plaintiffs made "only general allegations . . . fail[ed] to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations," did not "identify the job titles or duties performed by their fellow employees" and "did not specify to which location their observations pertained'").  Moreover, the fact that a plaintiff's "allegations may be based on hearsay does not diminish their value" for the purposes of establishing that other similarly situated potential plaintiffs exist. *Jeong Woo Kim*, 985 F. Supp. 2d at 448–49 (granting conditional certification where the plaintiff's affidavit relied "not only on his own observations, but on statements made by other potential opt-in plaintiffs, who allegedly told [the plaintiff] that they . . . never received overtime compensation").

Here, Plaintiff provides sufficient factual detail to enable the Court to conclude that he is similarly situated to other potential members of a collective which includes deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs but excludes cashiers, dishwashers, head fry woks, and miscellaneous kitchen staff.  As it relates to deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs, Plaintiff's Affidavit includes details regarding the conversations he had with these employees, including the employees' name or nickname and employment position, as well as the general circumstances under which the conversations took place with the specific employee, including where and/or when the conversations occurred.  *See* Li. Aff. ¶¶ 59–65, 74–103, 116–131, 147–210.  Plaintiff further states that he personally observed the employees' hours and schedules when driving to and from work with them.  *Id*. ¶¶ 47–55.  Based on his conversation and observations, Plaintiff details each employees' monthly salary, number of days worked each week, and their start and end times for each day.  *Id*.  ¶¶ 43, 59–65, 74–103, 116–131, 147–210.  Plaintiff attests that these employees consistently worked in excess of 40 hours per week and were paid either a fixed monthly salary or a salary within a fixed range.  *See id*.

Although Defendants point out that Plaintiff does not claim that any of his coworkers expressly stated to him that their salary does not include overtime compensation, Plaintiff nonetheless states that his coworkers received a fixed monthly salary or a salary within a fixed range.  Under the FLSA and NYLL "a fixed salary [will not] be deemed to include an overtime component in the absence of an express agreement."  *See Francois v. Mazer*, No. 09-CV-3275, 2012 WL 653886, at *4 (S.D.N.Y. Feb. 28, 2012) (citing *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010) and *Giles v. City of N.Y.*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)); *see also Benitez v. Demco of Riverdale, LLC*, No. 14-CV-

16

7074, 2015 WL 803069, at *2 (S.D.N.Y. Feb. 19, 2015) ("There is a rebuttable presumption that an employer's payment of [a] weekly salary represents compensation for [only] the first 40 hours of an employee's work week."); *Ji v. Jling Inc.*, No. 15-CV-4194, 2016 WL 2939154, at *4 (E.D.N.Y. May 19, 2016) ("[T]here is a rebuttable presumption that 'a daily or weekly salary does not include an overtime premium for the hours worked in excess of forty hours per week . . . .'") (quoting *Solis v. Cindy's Total Care, Inc.*, No. 10-CV-7242, 2012 WL 28141, at *19 (E.D.N.Y. Jan. 5, 2012)). Moreover, contrary to Defendants' contentions [Defs.' Opp'n at 8–9, 16], the fact that Plaintiff was paid differently, namely, that he received tips in addition to a fixed monthly salary or received solely tips, does not necessarily preclude a finding that he and other employees were similarly situated with respect to their compensation of overtime wages. *See Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967, 2020 WL 2832776, at *4 (S.D.N.Y. June 1, 2020) (finding that different categories of employees were similarly subject to a common unlawful policy or practice of nonpayment of overtime regardless of whether they were paid a flat rate or on an hourly basis); *Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 267 (D. Conn. 2020) (finding that different categories of employees were similarly subject to a common unlawful policy or practice of nonpayment of overtime regardless of whether they were tipped or non-tipped employees). Courts in the Second Circuit have granted conditional certification of a collective including both tipped and non-tipped employees, where, as here, the plaintiff sufficiently alleges that the tipped employees—similar to the non-tipped employees—were denied overtime wages for hours worked in excess of 40 hours a week. *See Gui Zhen Zhu*, 424 F. Supp. 3d at 266 ("Nor does Plaintiffs' intent to include in the collective action not only salaried but also tipped employees—who might be exempt from the FLSA's minimum wage provisions—defeat conditional certification.").

As such, the Court finds that the cumulative factual allegations contained in Plaintiff's Affidavit are sufficient to establish a factual nexus between Plaintiff's situation and that of deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs such that they are similarly situated victims of a common policy or plan to deny overtime wages. *See Liping Dai v. Lychee House, Inc.*, No. 17-CV-6197, 2018 WL 4360772, at *8 (S.D.N.Y. Aug. 29, 2018) (granting conditional certification based on the plaintiff's observations and conversations with his coworkers who worked in excess of 40 hours and were compensated a fixed rate regardless of the hours worked); *Wraga*, 2006 WL 2443554, at *2 (granting conditional certification based on single plaintiff's affidavit where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who worked in excess of 40 hours without receiving overtime wages); *Gjurovich*, 282 F. Supp. 2d at 96 (granting conditional certification where plaintiff's declaration "identified by name a number of current or former . . . employees who held the same or similar positions as the Plaintiff . . . who, like Plaintiff, were paid a fixed weekly salary, and may not have received overtime compensation if he or she worked in excess of forty hours each week").

However, as it relates to cashiers, dishwashers, head fry woks, miscellaneous kitchen staff, and "all non-exempt and non-managerial employees," Plaintiff does not provide sufficient factual details to establish they are similarly situated victims of a common policy or plan to deny overtime wages or any other FLSA violations Plaintiff suffered, such as nonpayment of minimum wages or illegal retention of tips.  First, Plaintiff's Affidavit lacks any factual details regarding his knowledge about the cashier's wage information.  Second, although Plaintiff states that his knowledge of the dishwashers' salary is based on a conversation with one dishwasher, Plaintiff "does not . . . provide *any* detail as to a *single* such . . . conversation."  *Sanchez*, 2014

18

WL 465542, at *2 (emphasis in original); *see also Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964,

2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2015) (denying motion for conditional certification

of a class of all non-managerial employees based on "unsupported assertions" regarding

discussions and comparisons among coworkers); *Ikikhueme v. CulinArt, Inc.*, No. 13-CV-0293,

2013 WL 2395020, at *2–3 (S.D.N.Y. June 3, 2013) (denying motion for conditional

certification supported only by the plaintiff's declaration containing "unsupported assertions"

regarding other employees).  Plaintiff does not identify who the dishwasher was by name,

nickname, or national origin, or indicate when or where the conversation occurred.  *See Lijun

Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV-12220, 2019 WL 4493429, at *7 (S.D.N.Y. Sept.

9, 2019) ("[C]ourts frequently grant conditional certification when plaintiffs identify similarly

situated employees only by nicknames, job titles, or nationalities.") (citing *Mendoza v. Ashiya

Sushi 5, Inc.*, No. 12-CV-8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013)).  "Such

details are particularly important where a conditional certification motion is based on the lone

affidavit of a single employee, who performed a single job function."  *Mata*, 2015 WL 3457293,

at *4.  Third, as argued by Defendants, the factual allegations in Plaintiff's Affidavit demonstrate

that the circumstances of head fry wok, Hunanese Lao Da, is more disparate than similar to

Plaintiff's situation because, unlike Plaintiff, the head fry wok's salary is derived, in part, from a

percentage of Red Tiger's sales.  Fourth, Plaintiff does not sufficiently identify the job title or

duties performed by "miscellaneous kitchen staff."  *See Qing Gu*, No. 13-CV-2322, 2014 WL

1515877, at *3 ("Plaintiffs fail to provide any factual detail about the other employees. . . . Nor

do they identify the job titles or duties performed by their fellow employees.").

 Lastly, Plaintiff's Affidavit does not contain a single factual allegation to support an

inference that "all non-exempt and non-managerial employees," were subject to a common

policy or plan. Although Plaintiff's "burden of proof [at the conditional certification stage] is low, it is not non-existent," and "certification is not automatic." *Elamrani*, 2016 WL 5477590, at *4 (internal quotations omitted). To justify conditional certification of a collective which includes additional employees, Plaintiff is required to make "a modest but job-specific factual showing." *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. Nov. 18, 2015) (emphasis omitted) (rejecting plaintiffs' contention that adequate allegations with respect to one category of worker should compel the court to infer that the unlawful policy extended across defendants' entire non-managerial workforce). Plaintiff must offer at least some "probative information, such as [these employees'] approximate wages, hours, and duties." *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17-CV-0273, 2018 WL 1737726, at *4 (S.D.N.Y. Mar. 26, 2018) (declining to certify a class beyond delivery workers due to insufficient allegations). In the instant case, Plaintiff has not provided any such probative information in support of the broad collective he seeks and therefore has not satisfied his burden that he and "all non-exempt and non-managerial employees" were similarly situated victims of an unlawful policy or plan.

In further opposition to conditional certification, Defendants cite the Burns Affidavit in an attempt to raise certain factual disputes to contest that any violation of the FLSA or NYLL occurred. *See* Defs.' Opp'n at 7–9. Defendants' claim, without any explanation or legal authority, that certain employees' fluctuation in salary between certain ranges per month demonstrates that Defendants properly paid their employees overtime wages and that Plaintiff received minimum wage. *See id.* However, at this preliminary certification stage, "the court does not resolve factual disputes, decide ultimate issues on the merits or make credibility determinations." *Lynch*, 491 F. Supp. 2d at 368 (S.D.N.Y. 2007) (citation omitted). Indeed,

"[t]he focus of this inquiry [ ] is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated.'" *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *see Pal v. Sandal Wood Bar N Grill, Inc.*, No. 14-CV-0301, 2015 WL 237226, at *1 (S.D.N.Y Jan. 15, 2015) ("Defendants argue that they did not violate any federal or state labor laws, but did in fact pay full wages . . . .  This argument is inapposite to the instant motion because it goes to the underlying merit of plaintiffs' claims.").

Accordingly, the Court grants conditional certification as to all current and former waiters/waitresses, receptionists, deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs employed by the Defendants at any time from June 6, 2016, to the present.

### B.    The Notice of Pendency

#### 1.   *Scope of Collective Action*

As discussed above, the Court has modified the scope/definition of the collective. Therefore, the Notice of Pendency shall read as follows.

> Current and former non-exempt waiters/waitresses, receptionists, deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs employed at any time from June 06, 2016, to the present by: (1) RED TIGER DUMPLING HOUSE INC d/b/a Red Tiger Dumpling House; and (2) TWO COUNTRIES DUMPLING HOUSE INC d/b/a Red Tiger Dumpling House, both located at 1320 Stony Brook Rd., Stony Brook, NY 11790; (3) JUN WEN BURNS, and (4) HAI QING LIU.

#### 2.   *Notice Period*

Plaintiff requests to send the Notice of Pendency to those potential members of the collective employed by Defendants from June 6, 2016—three years preceding the commencement of this action—to the present.  *See* Pl.'s Mem. at 28.  In opposition, Defendants

argue that Plaintiffs have failed to set forth any evidence that Defendants' conduct was willful, and therefore the collective action period should only be two years. *See* Defs.' Opp'n at 17.

The statute of limitations under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Valerio v. R.N.C. Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016) (collecting cases). However, "[c]ourts in this circuit have generally held that where willfulness is in dispute, a three-year state of limitations applies at the conditional certification stage." *Alvarez v. IBM Rests., Inc.*, 839 F. Supp. 2d 580, 587–88 (E.D.N.Y. 2012) (citation omitted); *Guzelgurgenli v. Prime Time Specials, Inc.*, No. 11-CV-4549, 2012 WL 3264314, at *40–41 (E.D.N.Y. Aug. 8, 2012) (internal citations omitted). In the instant action, Plaintiff repeatedly alleges willfulness in his Amended Complaint. *See* Am. Compl. ¶¶ 2, 21, 76, 80, 88–89. Although Defendants deny these allegations in their Answer [Am. Ans. ¶¶ 2, 21, 76, 80, 88–89], it of no moment for purposes of defining the scope of the collective. *See Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."). Accordingly, the Court finds it appropriate to apply a three-year statute of limitations under the FLSA at this stage of the proceedings. *See Pequero v. Montafon, LLC*, No. 18-CV-12187, 2020 WL 4016756, at *13 (S.D.N.Y. July 15, 2020) (applying three-year statute of limitation even though defendants disputed willfulness of alleged violations).

### 3. *Equitable Tolling*

Plaintiff requests that the statute of limitations be tolled for 90 days to account for "unnecessary delays." *See* Pl.'s Mem at 29–30.  Defendants oppose this request arguing that Plaintiff failed to demonstrate he has acted with reasonable diligence or the time it has taken for the Court to review the instant motion amounts to an extraordinary circumstance warranting tolling. *See* Defs.' Opp'n at 14–15.

Under the FLSA, the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit.  *See* 29 U.S.C. § 256(b).  However, "[a] district court may toll the limitations period to avoid inequitable circumstances." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003) (quoting *Chapman*, 288 F.3d at 512).  Courts in the Second Circuit "have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang*, 2015 WL 4603117, at *14 (citing *Robles*, 2013 WL 6684954, at *13); *McGlone*, 867 F. Supp. 2d at 445 (finding that potential plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings").

In light of the length of time that has passed since the instant motion was filed, and the relative diligence of Plaintiff's counsel in pursuing conditional certification, the Court is granting equitable tolling from the date the motion was filed. *See Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091, 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) (granting equitable tolling from the date the motion was filed because of the "length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification"); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 188 (E.D.N.Y. 2015) ("Given Plaintiff's overall steadfast due diligence during the pendency of these motions, the balance of equities requires granting equitable tolling from September 9, 2013, the date Plaintiff filed the Motion to Certify.").

### 4. *Opt-In Period*

Plaintiff requests that opt-in notices be returned within 90 days of the date of an order granting conditional certification. *See* Notice of Pendency at 3; Publication Order at 2. Defendants' opposition to the instant motion does not expressly consent to or oppose this request. Although courts have granted opt-in periods of up to 90 days, it has only generally done so "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011) (citations omitted). Here, the Court finds that the current COVID-19 pandemic has resulted in exceptional circumstances which justify such an extended period. Accordingly, the Notice of Pendency shall provide for a 90 day opt-in period. *See Fang v. Zhuang,* No. 10-CV-1290, 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (noting a ninety-day opt-in period was warranted "in light of the frequent, *long-term international* travel of many of the prospective plaintiffs"); *Lopez v. JVA Indus., Inc.,* No. 14-CV-9988, 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (permitting a 90 day opt-in period); *Sherrill v. Sutherland Global Servs.,*

*Inc.,* 487 F.Supp.2d 344, 351 (W.D.N.Y.2007) (authorizing ninety-day opt-in period without consideration of any special circumstances).

### 5.   *Language of Notice and Consent to Join Forms*

Plaintiff requests that the Notice of Pendency be circulated in both English and Chinese. *See* Pl.'s Mem. at 29. Defendants do not oppose this request. "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio*, 314 F.R.D. at 76 (quoting *Colon v. Major Perry Street Corp.*, No. 12-CV-3788, 2013 WL 3328223, at *8 (S.D.N.Y. 2013)). Therefore, the Court authorizes Plaintiff to circulate the Notice of Pendency in both English and Chinese.

### 6.   *Fee Arrangement in Notice*

Defendants argue that the Notice should include the fee arrangement between Plaintiff's counsel and any opt-ins as well as the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in plaintiffs. *See* Defs.' Opp'n at 17. The Court disagrees.

A collective action notice must include a statement informing potential opt-in plaintiffs of any fee arrangement, to which the named plaintiffs and their counsel agreed and which may impact the opt-in plaintiffs' recovery. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007); *Mendoza*, 2013 WL 5211839, at *8. It is standard for a Notice to "include general information so that 'potential class members [ ] have a general understanding that plaintiffs' counsel will take a portion of any settlement or money judgment the class receives." *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (quoting *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12-CV-6852, 2013 WL 5951189, at *5 (S.D.N.Y. Nov. 7, 2013)).

In the instant case, Plaintiff's proposed Notice provides sufficient information regarding the impact of costs and fees on any potential recovery received by the opt-in plaintiffs.

Specifically, the proposed Notice provides that "costs and fees will be paid out of any settlement or money judgment Plaintiffs receive against Defendants," and that, "[i]f there is no settlement or money judgment, [Plaintiff's counsel] will not receive any fee." *See* Notice of Pendency at 4; *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 270–71 (D. Conn. 2020) (finding similar language contained in notice of pendency to sufficiently detail the fee arrangement between counsel and potential opt-ins). Moreover, because this Court must approve the percentage of any settlement reached with the opt-in Plaintiffs which may be allocated to attorneys' fees, it is premature at this point to include that specific information in a Notice of Pendency. *See Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17-CV-0273, 2018 WL 1737726, at *6 (S.D.N.Y. Mar. 26, 2018); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV-12220, 2019 WL 4493429, at *19 (S.D.N.Y. Sept. 9, 2019) ("To the extent that Defendants may be requesting inclusion of detailed information [in the Notice of Pendency] such as the percentage of Plaintiffs' counsel's contingency fee, such a request is improper."). The Court finds that the information provided in the proposed Notice of Pendency is sufficient.

### 7. *Distribution of the Notice*

Plaintiff proposes to disseminate the approved Notice of Pendency through several means, none of which Defendants oppose. First, Plaintiff requests to disseminate the Notice "via mail, email, text message, or social media group and individual chat and posts." *See* Pl.'s Mem. at 24–25. Courts in the Second Circuit have permitted dissemination of notice by mail, email, and text message "where, as here, the nature of the employer's business facilitated high turnover rate among employees." *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (citing *Martin v. Sprint/united Mgmt. Co.*, No. 15-CV-5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016)); *see also Bhumithanarn*, 2015 WL 4240985, at *5 (authorizing distribution of notice by text message "given the high turnover

characteristic of the restaurant industry"). Accordingly, the Court authorizes Plaintiff to disseminate the Notice by mail, email, and text message. However, the Court declines to permit Plaintiff to disseminate the Notice through social media because Plaintiff has not provided any justification to deviate from the traditional methods generally accepted by courts sitting in this Circuit for disseminating notice to the putative collective members. *See Qian Xiong Lin v. DJ's Int'l Buffet Inc.*, No. 17-CV-4994, 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (prohibiting distribution of notice on social media and websites finding "no reason to deviate from [the typical methods for disseminating notice]" and that such a proposed method "would be overbroad and not likely to materially improve the chances of notice") (internal quotations omitted).

Second, Plaintiff seeks to distribute Notice on the website of Plaintiff's counsel which would allow for electronic submission of the Notice and Consent Forms and for potential opt-ins to contact Plaintiffs' counsel for additional information. In support of this request, Plaintiff cites a civil docket entry in case number "18-CV-10338" and a Southern District case, *Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718, 2016 WL 4718413, at *9–10 (S.D.N.Y. Sept. 9, 2016). The civil case number provided by Plaintiff is not associated with any open or closed case in this District and therefore the Court has nothing to consider. Further, *Varghese* presented the question of whether the Court should allow plaintiff's counsel to post the opt-in notice on a stand-alone website, not counsel's own website. *See Varghese*, 2016 WL 4718413, at *9–10. Plaintiff has not provided any justification or support to disseminate Notice on the website of Plaintiff's counsel and the Court has no basis on which to find that posting the Notice on counsel's own website would reach potential plaintiffs in a way that mail, text, and email would not. Accordingly, the Court declines to permit Plaintiff's counsel to disseminate the Notice

27

through counsel's website.  *See Zhongle Chen v. Kicho Corp.*, No. 18-CV-7413, 2020 WL 1900582, at *10 (S.D.N.Y. Apr. 17, 2020) (declining dissemination of the notice of pendency on counsel for plaintiff's website without any justification for the need to do so).

Third, Plaintiff wishes to post the Notice in a conspicuous location at Defendants' restaurant.  *See* Pl.'s Mem. at 26; Proposed Order at 3.  Courts in the Second Circuit "regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms."  *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972, 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018); *see also Trinidad*, 962 F. Supp. 2d at 564 (collecting cases).  Courts do so even where they have also directed defendants to produce contact information for potential opt-in plaintiffs.  *See Castillo*, 2018 WL 1581975, at *16–17; *Barbato v. Knightsbridge Properties*, No. 14-CV-7043, 2015 WL 5884134, at *7 (E.D.N.Y. Oct. 8, 2015); *Whitehorn*, 767 F. Supp. 2d at 449.  Finding no reason to deviate from the common practice of courts in this Circuit in requiring notice to be posted in one or more reasonable locations in the common areas at the workplace, the Court grants Plaintiff's request.

Fourth, Plaintiff seeks to disseminate the Notice in the employees' pay envelopes or other method of delivery of their paycheck information.  *See* Pl.'s Mem. at 26.  Defendants have taken no position on this request.  Courts in this Circuit have varied in their approach to disseminating notice via pay envelopes.  *See Chui*, 2020 WL 3618892, at *11 (denying plaintiff's request to disseminate the Notice of Pendency in pay envelopes or with paycheck information, in light of existing caselaw and the fact that plaintiff did not cite any specific legal authority in support of the request); *Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 388 (S.D.N.Y. 2018) (denying the request, the court noted that "[e]nclosure of a notice in a pay envelope, however, is not always

28

ideal because it may suggest either that the notice originates with the employer or that filling it

out may actually be required or expected by the employer"); *Garcia*, 102 F. Supp. 3d at 551

(denying request to hang notices in the workplace and pointing out that counsel "should first

discuss the best methods to be used to reach current employees, which might include, for

example, the enclosure of the notice with a pay envelope"); *Alvarez v. Schnipper Restaurants

LLC*, No. 16-CV-5779, 2017 WL 6375793, at *6 (S.D.N.Y. Dec. 12, 2017) (instructing counsel

to discuss the best methods to be used "to provide current employees of Defendants notice of the

lawsuit, including by posting a notice at the four Schnipper's locations or by enclosing notice

within a pay envelope"); *Tapia-Castrejon v. Sahara E. Rest. Corp.*, No. 14-CV-8080, 2015 WL

5022654, at *3 (S.D.N.Y. Aug. 18, 2015) (denying plaintiff's application to post the proposed

notice at defendants' workplace and instructing counsel to confer on the best method to be used

to reach other busboys, citing *Garcia* alternative of enclosing notice with a pay envelope).  The

Court has been unable to locate any Second Circuit decision to date which states or suggests that

providing notice through pay envelopes may be an appropriate method of dissemination in

certain situations.  In the current circumstances, the Court finds that authorizing dissemination in

pay envelopes would place an added burden on the employer to first determine who the affected

individuals are and then segregating those pay stubs for the notice to be enclosed.  Considering

the apparent lack of precedent on this issue and the fact that Plaintiff has not cited any specific

legal authority for the request, the Court denies Plaintiff's request to disseminate the Notice of

Pendency in pay envelopes or with paycheck information.

Finally, Plaintiff requests that Defendants be directed to publish the Notice in Chinese

and English language newspapers if Defendants fail to furnish the contact information of the

collective or more than 20% of the Notices of Pendency are returned undelivered.  *See*

Publication Order at 4.  The Court denies Plaintiff's request as premature.  *See, e.g.*, *Lijun Geng*, 2019 WL 4493429, at *20 (rejecting identical request on the basis that it was premature); *Genxiang Zhang*, 2019 WL 699179, at *14 (same).  If Plaintiff has concerns regarding the adequacy of the contact information produced by Defendants or the deliverability of the Notice, Plaintiff may renew this request at an appropriate time.

### 8.  *Reminder Notice*

Plaintiff requests authorization to send out a deadline reminder by mail and email to the collective.  *See* Pl.'s Mem. at 26.  Since Defendants did not articulate any opposition to this request, the Court authorizes Plaintiff to distribute one reminder notice by mail and email prior to the expiration of the opt-in period to alert potential plaintiffs that the deadline is coming due. *See, e.g.*, *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 466 (E.D.N.Y. 2014) (authorizing plaintiffs to circulate reminder forms); *Puglisi*, 998 F. Supp. 2d at 102 (same); *Limarvin v. Edo Rest. Corp.*, No. 11-CV-7356, 2013 WL 371571, at *3–4 (S.D.N.Y. Jan. 21, 2013) (same); *Chhab v. Darden Rests., Inc.*, No. 11-CV-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.").  Thus, Plaintiff may send one reminder notice by mail and email to the collective before the opt-in deadline.

### 9.  *Production of Identifying Information*

Plaintiff requests that Defendants produce, within fifteen (15) days of this Order, a Microsoft Excel file including the full names, last known mailing addresses (including apartment number if applicable), last known telephone numbers, last known email addresses, social media handles (*i.e.*, WhatsApp, WeChat ID, and/or Facebook usernames), and work locations, positions

30

and dates of employment of potential plaintiffs.  *See* Publication Order at 2.  Defendants have

taken no position on this request.

"Many courts have determined that discovery of contact information is appropriate at the

notice stage in FLSA collective actions."  *Khamsiri v. George & Frank's Japanese Noodle*

*Restaurant Inc.*, No. 12-CV-0265, 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) (citing

*Siewmungal v. Nelson Mgmt. Grp. Ltd.*, No. 11-CV-5018, 2012 WL 715973, at *5 (E.D.N.Y.

Mar. 3, 2012) (collecting cases)).  It is generally "appropriate for courts in collective actions to

order the discovery of names, addresses, telephone numbers, email addresses, and dates of

employment of potential collective members."  *See Velasquez v. Digital Page, Inc.*, No. 11-CV-

3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citation omitted); *Puglisi*, 998 F.

Supp. 2d at 102 ("In regard to requests for names, last known addresses, telephone numbers

(both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind

of request in connection with a conditional certification of an FLSA collective action.") (internal

quotations and citation omitted); *Rosario*, 828 F. Supp. 2d at 522 ("The Court finds the

disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and

dates of employment to be appropriate."); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-

1145, 2010 WL 4340255, at *5–6 (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names,

addresses, telephone numbers, and dates of employment to be "essential to identifying potential

opt-in plaintiffs").

Consequently, Defendant shall provide to Plaintiff the names, last known mailing

addresses (including apartment number if applicable), telephone numbers, email addresses,

positions, and dates of employment of current and former waiters/waitresses, receptionists,

deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs

staff employed at any time from June 6, 2016, to the present by Defendants.  *See Ji Li v. Ichiro Restaurant Inc.*, No. 14-CV-0242, 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015) (limiting the production of contact information to those members of the collective action found to be similarly situated).  However, the Court declines to direct Defendants to produce social media handles and other information since doing so would be burdensome to Defendants and would not serve to facilitate the notice process under these circumstances where the Court has limited the methods of dissemination to exclude social media.  *See Salomon v. Adderley Industries, Inc.*, 847 F. Supp. 2d at 566 ("*To facilitate the notice process*, courts routinely order an employer to provide plaintiffs with information regarding potential opt-in plaintiffs") (emphasis added); *Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-0729, 2018 WL 6492741, at *9 (E.D.N.Y. Dec. 10, 2018) (denying request for "WeChat ID and/or Facebook usernames" seeing "no reason that notice should be provided in this manner").

In light of the current circumstances which have arisen as a result of the COVID-19 pandemic—circumstances which did not exist when this motion was originally filed—the Court is granting Defendants' request for 30 days to provide the information at issue.  Moreover, the information produced is to be treated as confidential and to the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose.

## II.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, in part, and DENIED, in part, subject to the limitations discussed in this Memorandum and Order.  In sum, the Court certifies the following collective action:

Current and former non-exempt waiters/waitresses, receptionists, deliverymen, packers, oil woks, fry woks and their helpers, and soup dumpling/dumpling chefs employed at any time from June 6, 2016, to the present by: (1) RED TIGER DUMPLING HOUSE INC d/b/a Red Tiger Dumpling House; and (2) TWO COUNTRIES DUMPLING HOUSE INC d/b/a Red Tiger Dumpling House, both located at 1320 Stony Brook Rd., Stony Brook, NY 11790; (3) JUN WEN BURNS, and (4) HAI QING LIU.

The Court further Orders that:

1. Within 30 days of entry of this Order, Defendants shall produce a computer-readable data file including the full names, last known mailing addresses (including apartment number if applicable), telephone numbers, email addresses, and dates of employment of the putative collective;

2. Within 10 days of issuance of this Order, the parties are to meet and confer in good faith, and submit a revised proposed Notice of Pendency and Consent to Join Form that complies with the directives set forth here;

3. Within 30 days of its approval by the Court, Plaintiff or its designated representative shall cause a copy of the Notice of Pendency and Consent to Join form to be disseminated to the putative collective and to be posted at Red Tiger Restaurant located at 1320 Stony Brook Rd., Stony Brook, New York 11790.

**SO ORDERED:**

Dated: Central Islip, New York
        November 30, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge