UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LI NI, *on his own behalf and on behalf of others similarly situated*,

                                    Plaintiff,

    -against-

RED TIGER DUMPLING HOUSE INC. d/b/a RED TIGER DUMPLING HOUSE, TWO COUNTRIES DUMPLING HOUSE INC. d/b/a RED TIGER DUMPLING HOUSE, JUN WEN BARNES, and HAI QING LIU,

                                    Defendants.
------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
19-cv-3269 (GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

    Presently before the Court in this wage and hour litigation, on referral from the Honorable Gary R. Brown for Report and Recommendation, is Plaintiff Li Ni's ("Plaintiff" or "Ni") motion for class certification pursuant to Federal Rules of Civil Procedures ("Fed. R. Civ. P.") 23.  *See* Plaintiff's Motion to Certify Class ("Plaintiff's Motion" or "Pl. Mot."), Docket Entry ("DE") [70].  By way of Complaint dated June 6, 2019, *see* Complaint, DE [1], followed by an Amended Complaint dated October 4, 2019, *see* Amended Complaint, DE [16], Ni commenced this action on his own behalf and on behalf of others similarly situated against Defendants Red Tiger Dumpling House Inc. d/b/a Red Tiger Dumpling House ("Red Tiger"), Two Countries Dumpling House Inc. d/b/a Red Tiger Dumpling House ("Two Countries"), Jun Wen Burns ("Burns") and Hai Qing Liu ("Liu," and collectively "Defendants") for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq*. and New York Labor Law

("NYLL") §§ 190, 650 et seq. for unpaid tips, minimum and overtime wages, and spread of hours premiums, and failure to provide legally required wage notices and statements.  *See* Amended Complaint, DE [16].

 With respect to his NYLL claims, Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23, designation as class representative, and approval and distribution of the proposed class notice (the "Proposed Notice").  *See* Plaintiff's Memorandum of Law in Support of Motion for Class Certification ("Plaintiff's Memorandum" or "Pl. Mem."), DE [70-5].  Specifically, Ni seeks to certify the following class:

> All Front of the House workers (including waiters/waitresses, receptionists and deliverymen) and Back of the House workers ([i]ncluding packers, oil woks, fry woks and their helpers and soup dumpling chefs) who were employed by Defendants during the six years immediately preceding the initiation of this action, or June 6, 2013, up to the date of the decision on this motion.

Pl. Mem. at 1 (the "Proposed Class").  Plaintiff also requests that the Court certify a subclass of tip-eligible employees with respect to his illegal tip retention claim.  *See id*.  Defendants oppose.  *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification ("Opposition" or "Opp."), DE [70-6].  For the reasons set forth below, the Court concludes that Plaintiff has failed to satisfy the requirements of Rule 23(a) and (g) with respect to the Proposed Class.  Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## I. BACKGROUND

### A. <u>Facts</u>

 The following facts are taken from the parties' submissions, declarations and exhibits in connection with Plaintiff's Motion.

Ni was employed by Defendants as a waiter from September 15, 2015 to May 12, 2019 at their restaurant in Stony Brook, New York.  *See* Affidavit of Li Ni in Support of Plaintiff's Motion ("Ni Affidavit" or "Ni Aff."), DE [70-2], ¶ 3.  Defendant Burns is the president of Two Countries.  *See* Affidavit of Jun Wen Burns in Support of Defendants' Opposition to Plaintiff's Motion ("Burns Aff."), DE [70-10], at ¶ 2.  Defendant Liu was the head fry wok at Red Tiger during Plaintiff's employment.  *See* Reply in Further Support of Plaintiff's Motion ("Pl. Reply."), DE [70-40], at 2

### 1. Facts Pertaining to Named Plaintiff

Burns hired Plaintiff on September 15, 2015 as a waiter at Red Tiger.  Ni Aff. at ¶¶ 3-4.  Throughout his employment, Ni asserts that he worked between six and seven days a week for between 66 and 77 hours with limited or no breaks.  *See id.* ¶¶ 9-15.  Plaintiff had approximately five minutes each to eat lunch and dinner, and if a customer's order came in, he was expected to finish his break early to attend to the order.  *Id.* ¶¶ 14-15.  The restaurant had about 14 employees at any given time.  *Id.* ¶ 39.  According to Ni, from September 15, 2015 to November of 2018, he received no compensation for his work, apart from customer tips.  *Id.* ¶ 16.  From December 2018 to February 2019, Plaintiff received $100 per month, not including tips, and from March 2019 through May 12, 2019, he once again received no compensation other than tips.  *Id.* ¶¶ 17-19.  Throughout his employment, Plaintiff received a fixed rate per day of between $150 and $180 each day he worked from a "tip pool" shared amongst other employees.  *Id.* ¶¶ 20-21.

In or around 2017, Red Tiger's receptionist quit, and as a result, Ni answered the phone and took customer orders on three days each week. *Id.* ¶ 27. On such days, Plaintiff received only $10 a day in tips from the tip pool. *See id.* ¶ 31. It is not clear whether Ni received any other compensation on these days. In December 2018, according to Plaintiff, Burns informed employees that tips on any orders placed via the delivery app GrubHub would be diverted to the "Kitchen Chef Fund" – used to buy coffee for Red Tiger's chefs – rather than added to the tip pool. *See id.* ¶¶ 32-33. During an unspecified time within Plaintiff's employment, Burns undercounted the tips collected on certain days. *Id.* ¶ 34.

Throughout his employment, Ni alleges that he was never informed of his hourly pay rate or any tip deductions towards the minimum wage, nor was he paid overtime for hours worked over forty per week or a spread of hours premium. *See id.* ¶¶ 24-25, 37-38. Moreover, he was never given statements reflecting his employer's name and address, rate of pay, deductions from wages, his allowances as part of his minimum wage, or gross and net pay in his native language. *Id.* ¶ 36.

## 2. Facts Concerning the Proposed Class

According to Plaintiff, at least 14 individuals worked in Defendants' restaurant at any given time, in the following categories: (1) oil woks, (2) dishwashers, (3) soup dumpling/dumpling chefs, (4) packers, (5) fry woks, (6) fry wok assistants/helpers, (7) deliverymen, (8) waiters/receptionists, and (9) miscellaneous workers. Ni Aff. at ¶ 39. Almost all Red Tiger employees worked at least five days a week. *Id.* ¶ 46. Red Tiger's employees were never provided any wage statements or notices. *Id.* ¶ 23.

4

Further, no employees received an extra hour's pay at minimum wage when they worked a spread of hours greater than ten hours. *Id.* ¶ 24.

Red Tiger operated a company car that transported its employees from Flushing Queens, New York to the restaurant in Stony Brook, New York. *See id.* ¶ 47. Each day, the employees were dropped off at the restaurant at approximately 11:00 a.m. to prepare to open the restaurant at 12:00 p.m. *Id.* ¶ 55. According to Defendants, the restaurant is open from 12:00 p.m. to 9:30 p.m., and employees do not work past 10:00 p.m. *See* Burns Aff. at ¶¶ 10-11. Ni asserts that he regularly spoke with his coworkers about their work and wages, both at work and during their rides to and from the restaurant. Ni Aff. at ¶ 41.

### a. Ni's Affidavit

In his affidavit, Plaintiff identified 19 former coworkers – by full name, nickname, job title, or some combination thereof – whom he contends were subject to similar unlawful employment practices. *See id.* ¶ 43 and accompanying table. Plaintiff's Motion seeks to certify a proposed class that includes "[a]ll Front of the House workers (including waiters/waitresses, receptionists an[d] deliverymen) and Back of the House workers ([i]ncluding packers, oil work, fry work and their helpers and soup dumpling chefs)." Pl. Mem. at 1. The Court therefore summarizes the evidence for each category.

### 1. Waiters/Receptionists

One individual, identified by the nickname Xiao Zheng, was a waiter employed at Red Tiger. Ni Aff. at ¶ 59. At some unspecified time during his employment, he

worked as a receptionist on Wednesdays. *See id.* ¶ 61. Zheng was driven to and from the restaurant in the company car and worked from 11:00 a.m. to 10:00 p.m. for six days each week, with no break. *Id.* ¶¶ 62-64. Based on conversations with Zheng, Ni learned that Zheng was only compensated via a share of the tip pool and was not paid a salary. *See id.* ¶ 65.

Another employee, identified only as Lisa, worked as a waiter and receptionist at Red Tiger. *Id.* ¶ 66. Like Plaintiff and Zheng, she was driven to and from the restaurant in the company vehicle and worked from 11:00 a.m. to 10:00 p.m. each day, with no break. *Id.* ¶¶ 68-70. Lisa worked five days each week. *Id.* ¶ 67. Ni also states that Lisa received no salary and was only paid a share of the tip pool as compensation. *See id.* ¶ 43 and accompanying table. According to Defendants, the waiters at Red Tiger were compensated on an hourly basis. Burns Aff. at ¶ 9.

## 2. Deliverymen

Plaintiff identified one deliveryman by the nickname Lao Zhu, who also drove employees to and from work each day in the company vehicle. Ni Aff. at ¶ 74. Lao was an employee at Red Tiger when Plaintiff was first hired and remained employed there after Ni left. *Id.* ¶ 77. In addition to transporting employees to and from the restaurant, Lao worked as a deliveryman from 11:00 a.m. to 10:00 p.m. seven days a week, with no break. *See id.* ¶¶ 78-80. Plaintiff learned that Lao was paid a salary of $1,800 dollars a month via conversations with him during breaks and comments made by Burns. *Id.* ¶¶ 82-83. Including tips, Lao earned between $5,000 and $6,000 per month. *Id.* ¶ 85.

6

### 3. Oil Woks

The Oil Wok was not identified by name but was described as a man from Hunan province in China and "wore a little vest." *See id.* ¶¶ 96-97. The Oil Wok worked from 11:00 a.m. to 10:00 p.m. six days a week, with no breaks. *Id.* ¶¶ 98-99. This employee started working at Red Tiger about eighteen months after Plaintiff was hired and was still employed when Ni left. *Id.* ¶ 101. As a result of conversations with the Oil Wok at Red Tiger and in the company vehicle, Plaintiff learned that the Oil Wok was paid between $2,500 and $2,800 per month throughout his employment. *Id.* ¶¶ 102-03.

### 4. Fry Woks

Plaintiff identified the head fry wok at Red Tiger by his title "Lao Da" but asserts that this individual is "probably Defendant Liu." Pl. Reply. at 2; *see* Ni Aff. at ¶¶ 104-05. Lao Da worked from 11:00 a.m. to 10:00 p.m. six days a week. Ni Aff. at ¶¶ 109-11. He was paid $5,000 per month plus 10% of the sales of the restaurant, which amount to a total wage of $10,000 per month. *Id.* ¶ 115. Ni does not explain how he came to learn this information.

While there were at least five additional fry woks at Red Tiger during Plaintiff's employment, he identifies one as the "Cantonese Fry Wok," who Ni was friendly with. *See id.* ¶¶ 116-17. All fry woks, including the Cantonese Fry Wok, worked from 11:00 a.m. to 10:00 p.m. six days a week, initially with no break. *See id.* ¶¶ 43, 123. Beginning in October of 2018, Burns permitted the fry woks to take a

single one-hour break during the workday. *Id.* ¶¶ 118-19. The Cantonese Fry Wok told Plaintiff that he was paid between $3,500 and $4,000 a month. *Id.* ¶ 121.

### 5. Fry Wok Helper/Assistants

During his employment, Ni became acquainted with three "fry wok helpers" at Red Tiger. *Id.* ¶ 126. Plaintiff identified one specific fry wok helper as a man from the Dongbei region of China. *Id.* ¶¶ 126-27. The Dongbei fry wok helper worked from 11:00 a.m. to 10:00 p.m. six days a week. *Id.* ¶ 128. At an unspecified time, Ni overheard the Dongbei fry wok helper complain about his wages and learned he earned between $2,800 and $3,300 a month. *Id.* ¶¶ 129-30.

### 6. Soup Dumpling/Dumpling Chefs

Plaintiff identified one soup dumpling chef – by the nickname Lao Tou Zi – that worked at Red Tiger from September of 2015 until approximately September of 2016. *See id.* ¶¶ 147, 151. Lao Tou Zi worked from 11:00 a.m. to 10:00 p.m. six days a week, with no break. *Id.* ¶¶ 153-54. During smoke breaks outside the restaurant, Lao Tou Zi and Ni would discuss various topics, including their wages, and Plaintiff learned that Lao Tou Zi earned $3,500 a month. *Id.* ¶ 156.

Chen Jie was another soup dumpling chef, who worked at Red Tiger from 2016 to 2018. *Id.* ¶¶ 157, 159. Chen worked from 11:00 a.m. to 10:00 p.m. five days a week, with no break. *Id.* ¶¶ 160-162. During lunch, Chen told Ni that she was paid $3,500 per month. *Id.* ¶ 163.

Ni identified another dumpling chef – with the nickname Da Jie – that worked at Red Tiger throughout Plaintiff's employment, except for a period between October

of 2018 and May of 2019 when she was visiting China.  *See id.* ¶¶ 165-68.  Da Jie worked from 11:00 a.m. to 10:00 p.m. six days a weeks, with no break.  *Id.* ¶¶ 169-70. Ni learned – during the same conversation with Chen at lunch – that Da Jie earned $3,500 per month.  *Id.* ¶¶ 172-73.

Lastly, there was a soup dumpling chef nicknamed Da Ge at Red Tiger from 2018 through the end of Plaintiff's employment.  *Id.* ¶¶ 174-75.  Da Ge worked from 11:00 a.m. to 10:00 p.m. six days a week, with no break.  *Id.* ¶¶ 176-178.  Ni learned, during conversations with Da Ge, that he was paid between $2,800 and $3,000 per month.  *Id.* ¶¶ 179-80.

### 7.  Packers

Several individuals worked as packers at Red Tiger.  One packer, identified as "Older Packer," was a female relative of the Head Fry Wok, Lao Da, and worked from 2018 through end of Plaintiff's employment.  *Id.* ¶¶ 182-84, 188.  The Older Packer worked from 11:00 a.m. to 10:00 p.m. six days a week, with no break.  *Id.* ¶¶ 43, 185-86.  Due to her family ties with Lao Da, the Older Packer had Saturday off, rather than a less busy weekday.  *Id.* ¶¶ 186-187.  Through conversations with the Older Packer during his break, Ni learned that she was paid between $2,000 and $2,200 per month.  At an unspecified time, a twenty-year-old woman from Hunan, China was hired as a packer, and Plaintiff identified her only as the "Younger Packer."  *Id.* ¶¶ 192-93.  The Older Packer was then promoted to Assistant Chef.  *See id.* ¶¶ 43, 192.  The Younger Packer worked from 11:00 a.m. to 10:00 p.m. six days a week, with

no break.  *Id.* ¶¶ 43, 195-96.  Through conversations with the Younger Packer, Ni learned that she earned between $2,000 and $2,300 per month.  *Id.* ¶¶ 197-98.

Ah Wei also worked as a packer at Red Tiger during Plaintiff's employment. *Id.* ¶ 199.  Ah Wei worked from worked from 11:00 a.m. to 10:00 p.m. six days a week, with no break.  *Id.* ¶¶ 43, 203-04.  He was an efficient employee and would often manage the preparation and packaging of customer orders himself without Burns's assistance.  *Id.* ¶¶ 201-02.  Although he initially earned $2,200 a month, he received a raise to $2,800 at an unspecified time.  *Id.* ¶ 207.  During their smoke breaks, Plaintiff spoke with Ah Wei and learned of his wages, his raise and his ambition to earn another raise.  *Id.* ¶ 210.  Lao Da ultimately instructed Burns to fire Ah Wei because he asked for a pay increase.  *Id.* ¶¶ 209, 211.

### b. *Defendants' Tax and Payroll Records*

According to Defendants' tax records, Two Countries employed at least 48 individuals between 2015 and 2022, not including Defendants Liu and Burns.[1]  *See* Ex. 9 to Reply Declaration of John Troy in Support of Class Certification ("Troy Decl."), DE 70-11 (summarizing Exs. 1-8 to Troy Decl., Two Countries' W-2s and NYS-45s forms).  Defendants have also produced Two Countries' payroll records for the years 2021 and 2022, which identify 19 individual employees.  *See* Exs. 10-28 to Troy Decl.  According to Plaintiff, all but either 3 or 4 of these employees appear in

---

[1] Defendants' records for the year 2017 identify a "Baohua Shao" by a Social Security number ending in 4092 and a "Bao Hua Shao" with a Social Security number ending in 5924.  *See* Ex. 3 to Troy Decl. For the purposes of Plaintiff's Motion, the Court will accept Ni's representation that these individuals "must have been treated as the same person" and will therefore assume that Defendants' tax records reflect a total of 48 employees other than Liu and Burns.  *See* Pl. Reply at 1-2, n. 1.

Defendants' tax records. *See* Ex. 9 to Troy Decl. (matching employees appearing in Ex. 10-28 to those appearing in Exs. 1-8). Plaintiff asserts that Lisa, the female waiter identified in his affidavit, is in fact the "Li Sha" identified in Defendants' tax and payroll records. *See* Pl. Reply at 2. With respect to the remaining employees Ni lists in his affidavit, Plaintiff contends they "possibly" correspond to the individuals identified in Defendants' records. *Id.* (speculating that various nicknames and job titles correspond to individuals in Defendants' records).

According to Plaintiff, Defendants' tax records demonstrate that at various times many of Defendants' employees were paid the same amount of wages in each successive quarter. *See e.g.,* Ex. 9 to Troy Decl. at 1 (showing Zhihua Zhao was paid $2,405.00 in Q1, Q2 and Q3 of 2018 and $2,225.00 in all four quarters of 2019); *id.* at 2 (Caifa Zuo paid $2,470.00 for all four quarters of 2016); *id.* at 3 (Shejiao Xiao paid $2,990.00 in each quarter of 2016). This is not the case for every single employee, however, and the amounts each individual employee was paid per quarter often vary from year to year. *See generally* Ex. 9 to Troy Decl. In addition, the W-2 forms issued to Defendant Burns indicate that she received between $8,140.75 and $17,357.32 per year in tips as part of her compensation from 2017 to 2020, despite serving as Two Countries' President. *See* Exs. 3 – 6 to Troy Decl.

Ni further asserts that Defendants' payroll records – although incomplete, partially written in Chinese and difficult to read – show that at least some employees were not paid pursuant to an hourly minimum wage and were subsequently not paid time-and-a-half for hours worked over 40 per week or a spread of hours premium.

For example, for the week beginning January 17, 2022, Amy Huang worked 57 hours and 59 minutes over the course of 6 days, and her wage statement purports that her rate of pay was $15 per hour.  *See e.g.,* Ex. 10 to Troy Decl. at RT0890.  On one day, she worked more than 10 hours in a single shift.  *See id.*  The total at the bottom of the record, however, indicates that Huang was paid only $1,000 for the week.  *Id.*[2] According to Plaintiff, the total amount Huang was paid reflects a rate of $150 per day for 5 days of work, plus an additional $225 per day for 1 day, plus an additional $25.  *See id.*[3]

## B. <u>Procedural History</u>

Plaintiff commenced this action against Defendants on behalf of himself and others similarly situated on June 6, 2019 and filed an Amended Complaint on October 4, 2019.  *See* Complaint, DE [1]; Amended Complaint, DE [16].  Ni alleges violations of:  (i) FLSA § 203(m), (t) for illegal retention of tips, (ii) N.Y. Comp. Codes R. & Regs. ("NYCCRR") 12 §§ 146-2.1, 146-2.2 for illegal retention of tips, (iii) FLSA § 206 for failure to pay minimum wage, (iv) NYLL §§ 190, 650 *et seq.* for failure to pay minimum wage, (v) FLSA § 207 for failure to pay overtime, (vi) NYLL § 190 for failure to pay overtime, (vii) NYCCRR 12 §§ 146-1.6 for failure to provide spread of hours pay, (viii) NYCCRR 12 §§ 146-1.9 for failure to provide meal periods, and (ix) NYLL § 195 for failure to keep payroll records and provide wage notices and statements.

---

[2] Had Amy Huang been paid at a rate of $15 per hour, been paid time-and-a-half for hours worked over 40 per week, and received her spread of hours premium, she would have been paid $1,019.55 ($15/hour x 40 hours + $22.50/hour x 17.98 hours + $15).

[3] In his motion papers, Ni translates the combination of numbers and Chinese characters found on the record to reflect the following calculation:  ($150/day x 5 days = $225/day x 1 day = $25).  *See* Pl. Reply at 5-6.  Plaintiff does not explain how he came to this conclusion.

*See* AC.  Defendants answered the Amended Complaint on October 28, 2019, and discovery followed.  *See* DE [18].

Plaintiff moved for conditional certification of an FLSA collective action on November 21, 2019, which the Honorable Judge Kathleen Tomlinson, then assigned to this matter, granted in part subject to the limitations in her Order.  *See* DE [35]. To date, no individuals have joined the FLSA collective action pursuant to the notice approved by Judge Tomlinson.  *See* Pl. Mem. at 13.

This action was reassigned to this Court on November 23, 2021, and discovery concluded on February 28, 2023.  *See* Order Certifying Discovery is Complete. Plaintiff did not take any depositions during discovery.  *See* Declaration of Ge Qu in Opposition to Plaintiff's Motion ("Qu Decl."), DE [70-7], at ¶ 6.  Judge Brown referred Plaintiff's request for a premotion conference concerning his anticipated class certification motion and the underlying motion to this Court for report and recommendation on April 3, 2023.  *See* DE [65]; Order Referring Motion dated Apr. 3, 2023.  Following a premotion conference, Ni's motion was to be fully briefed by July 6, 2023.  *See* DE [66].

When Plaintiff's Motion was not filed, this Court held a status conference on October 3, 2023 and granted Plaintiff's request for an extension of time.  *See* DE [69]. Plaintiff's Motion was ultimately filed on November 7, 2023.  *See* Pl. Mot.  Ni seeks class certification pursuant to Fed. R. Civ. P. 23 on his NYLL claims, designation as class representative, and approval and distribution of the Proposed Notice.  *See* Pl. Mem. at 1-2.  For the reasons set forth below, the Court concludes that Plaintiff has

failed to satisfy the requirements of Rule 23(a) and (g) with respect to the Proposed Class. Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## II. LEGAL STANDARD

Rule 23(c)(1)(A) provides that "[w]hen a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23. The burden is on the plaintiff to establish the class certification requirements of Rule 23. *See Fedotov v. Peter T. Roach & Assocs., P.C.,* 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005). "In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the [Rule 23(a)] preconditions of . . . numerosity, commonality, typicality, and adequacy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 201-02 (2d Cir. 2008). Applicable here, the Court "may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). Further, the Second Circuit has recognized an "implied requirement of ascertainability" for class certification. *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 30 (2d Cir. 2006). "To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'" *Charron v. Pinnacle Grp. N.Y. LLC,* 269 F.R.D. 221,

229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009)).

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234, 133 S. Ct. 2304, 2307 (2013); *Avila v. Ardian Corp.*, No. 18-CV-4795-FB-TAM, 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule," and "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011). Moreover, the party seeking certification must make its showing by a preponderance of the evidence. *See Lujan v. Cabana Mgmt., inc.* 284 F.R.D. 50, 64 (E.D.N.Y. 2012). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982)). The district court is afforded broad discretion in determining class certification because it is often in the "best position to assess the propriety of the class action." *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-CV-5910, 2021 WL 3675148, at *3-4 (E.D.N.Y. Aug. 19, 2021) (citing *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001)).

## III.   DISCUSSION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to certify the following class:

> All Front of the House workers (including waiters/waitresses, receptionists and deliverymen) and Back of the House workers ([i]ncluding packers, oil woks, fry woks and their helpers and soup dumpling chefs) who were employed by Defendants during the six years immediately preceding the initiation of this action, or June 6, 2013, up to the date of the decision on this motion.

Pl. Mem. at 1. Ni also requests that Court certify a subclass of tip-eligible employees with respect to his illegal tip retention claim and seeks to be designated as class representative, as well as approval and distribution of the Proposed Notice. *See* Pl. Mem. at 1-2; *See* Pl. Reply at 6; Ex. 3 to Troy Decl. For the reasons set forth below, the Court concludes that Plaintiff has failed to satisfy the requirements of Rule 23(a) and (g) with respect to the Proposed Class. Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## A. **Rule 23(a) Prerequisites**

### 1. Numerosity

Initially, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). "[N]umerosity is presumed at a level of 40 members . . . ." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg on Class Actions § 3.05 (2d ed. 1985)). Plaintiffs need not present an exact calculation of the number of class members and "a court may rely on reasonable inferences from available facts

16

in drawing its conclusion." *Houser v. Pritzker*, 28 F. Supp. 3d 222, 242 (S.D.N.Y. 2014).

Here, Plaintiff fails to establish that the Proposed Class is sufficiently numerous. Ni requests that the Court certify a Proposed Class including: "[a]ll Front of the House workers (including waiters/waitresses, receptionists and deliverymen) and Back of the House workers ([i]ncluding packers, oil woks, fry woks and their helpers and soup dumpling chefs)." Pl. Mem. at 1. Defendants' tax and payroll records establish at that Red Tiger employed at least 48 people, other than Defendants Liu and Burns, between 2015 and 2022. *See* Ex. 9 to Troy Decl. Plaintiff, however, has not identified which of these employees fall into the job categories delineated in his class definition. *Compare* Pl. Mem. at 1, *with* Ex. 9 to Troy Decl. Ni merely speculates that employees included in Defendants' records correspond to individuals and job titles listed in Ni's Affidavit. *See* Pl. Reply at 2-3. As a result, the Court has no way to determine how many individuals fall into the Proposed Class.

Plaintiff also asks that the Court certify a subclass of "tip eligible employees" with respect to his illegal tip retention claim. *See* Pl. Reply at 6. As with the Proposed Class, Ni has failed to offer any evidence that this proposed subclass is sufficiently numerous. Neither Plaintiff's Affidavit nor Defendants' employment records specify how many employees were tip eligible and subject to Defendants' alleged unlawful tip misappropriation policy. As a result, the Court cannot conclude that Plaintiff's proposed subclass of tip eligible employees is sufficiently numerous.

2. <u>Commonality</u>

Next, the Court must find that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement obligates the named plaintiff to demonstrate that class members have suffered the same injury, not merely that they have all suffered a violation of the same provision of law. *see Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551. Therefore, Ni's claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Poplawski v. Metroplex on the Atl.*, LLC, No. 11-cv-3765 (JBW), 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012) (citation omitted). "Commonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)) (internal quotation marks omitted); see *Pino*, 2021 WL 3675148, at *5.

Applying the above standards, the Court determines that Ni has failed to satisfy the commonality requirement with respect to any of his claims. Plaintiff asserts – without evidentiary support – that all employees across all job categories were paid according to a flat daily rate, rather than at an hourly minimum wage. *See* Pl. Reply at 4. This assertion is based on Ni's conclusory analysis of Defendants'

payroll records and is not supported by any other evidence in the record.  Further, Plaintiff's own affidavit indicates that some employees were paid via tips alone, some were paid a daily wage, and others earned a monthly salary.  *See generally* Ni Aff. Moreover, Ni's secondhand accounts of his fellow employees' salary history – based entirely on hearsay rather than his personal knowledge – cannot form the basis of a class certification motion.  *See Lanqing Lin v. Everyday Beauty Amore Inc.,* No. 18-CV-729 (BMC), 2019 WL 3037072, at *3 (E.D.N.Y. July 11, 2019) (noting that class certification motions cannot be based on hearsay alone).  Plaintiff also fails to provide evidence that tip-eligible employees were subject to a common tip misappropriation scheme.  In short, Ni has not established that the Proposed Class – or the proposed subclass of tipped employees – were subject to a common policy or practice to violate their rights under the NYLL.  Accordingly, the Court concludes that the commonality requirement is not met with respect to either proposed class.

### 3. Typicality

The Court also determines that Plaintiff's claims are not "typical" of the Proposed Class.  The requirements of commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  *Marisol A. v. Giulianai,* 126 F. 3d 372, 376 (2d Cir. 1997) (citation omitted). Typicality occurs when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993)).  "In a

wage case, the typicality requirement is satisfied where the named plaintiff and proposed class members 'were subject to the same general employment scheme,' and their claims are based on 'the same course of events and legal theory.'" *Pino*, 2021 WL 3675148, at *8 (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 105 (E.D.N.Y. 2011)).

As noted above, Plaintiff has offered no evidence that the members of the Proposed Class or subclass were subject to the same scheme to violate their rights under the NYLL.  At best, the evidence demonstrates that the Proposed Class were compensated in a variety of ways.   Moreover, Ni asserts that throughout his employment he was paid in tips alone but claims that others in the Proposed Class were paid pursuant to a daily rate. *Compare* Ni Aff. at ¶¶ 16-19, 20-21, *with* Pl. Reply at 4-6.  Accordingly, Plaintiff's claims are not typical of the Proposed Class.

### 4. Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy analysis inquires whether a plaintiff's interests are antagonistic to those of the class. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250 (1997).

Here, Ni proposes that he be appointed class representative. *See* Pl. Mem. at 1-2.  Plaintiff contends that he is prepared to protect the interests of the class and

there is no conflict of interest between himself and the members of the Proposed Class. *See id*. at 9.  Ni, however, is not an adequate class representative because his claims are not typical of the Proposed Class.  Moreover, the remaining requirements of Rule 23(a) have not been met.  The Court therefore concludes that Plaintiff is not an adequate class representative.

### 5. Ascertainability

The Second Circuit has established a fifth prerequisite to class certification, ascertainability, which demands that a class be "'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"  *In re Petrobas Sec. Lit.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).  "A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 24-25.  "The court must be able to determine who is in the class 'without having to answer numerous individualized fact-intensive questions.'"  *Pino*, 2021 WL 3675148, at *9 (quoting *Fogarazzo v. Lehman Bros.*, 232 F.R.D 176, 181 (S.D.N.Y. 2005) (quotation and alteration omitted)).

As noted above, Plaintiff has failed to identify which employees included in Defendants' tax and payroll records fall into the job categories used to define the Proposed Class.  *See* Sec. III.A.1, *supra*.  Nor has Ni conducted any other discovery that could shed light on this issue.  As a result, there is no way for the Court to

determine who is a member of the Proposed Class and therefore it is not sufficiently ascertainable.

Accordingly, the Court concludes that each of the prerequisites of Rule 23(a) have not been met with respect to the Proposed Class and respectfully recommends that Plaintiff's Motion be denied. As such, the Court need not analyze whether the requirements of Rule 23(b) have been satisfied.

**B. <u>Troy Law's Appointment as Class Counsel</u>**

The Court also concludes that Plaintiff's Motion should be denied for failure to fulfill Rule 23(g). Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel.[4] Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Although the Court acknowledges the efforts that Troy Law has made in this case, the Court cannot ignore counsel's failure to take a single deposition during approximately four years of discovery. *See* Qu Decl. at ¶ 6. Troy Law also failed to

---

[4] As noted in the Advisory Committee's Notes to the 2003 Amendments for Fed. R. Civ. P. 23(g), the adequacy of class counsel is now considered under Fed. R. Civ. P. 23(g), rather than as part of the adequacy requirement of Fed. R. Civ. P. 23(a)(4).

file the present motion according to the original briefing schedule set by this Court and sought an extension of time three months after the deadline had passed. Moreover, upon filing Plaintiff's Motion, Troy Law failed to submit any supporting evidence apart from Ni's Affidavit. The Court further notes counsel's history in this Circuit, in which various courts have denied motions for class certification on the basis that Troy Law was inadequate to serve as class counsel. *See e.g., Jin v. Shanghai Original, Inc.,* 990 F.3d 251, 263 (2d Cir. 2021) (upholding order decertifying class where Troy Law was inadequate to serve as class counsel); *Shi Ming Chen v. A Taste of Mao,* 2021 WL 3277093, at *1 (S.D.N.Y. Aug. 20, 2021) (denying class certification motion based on Troy Law's inability to meet deadlines). For all of these reasons, the Court determines that Troy Law is inadequate to serve as class counsel in this action. Accordingly, and notwithstanding its conclusion that Plaintiff's Motion be denied on other grounds, the Court concludes that Troy Law should not be appointed class counsel.

## IV.   CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has failed to satisfy the requirements of Rule 23(a) and (g) with respect to the Proposed Class. Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See*

28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            May 29, 2024

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge

24